

**SIGNED this 10th day of January, 2013.**

_____
**JOHN C. AKARD**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| DANNY R. PENDLEY | 12-51542 |
| *DEBTOR* | CHAPTER 7 |

## MEMORANDUM OPINION SUSTAINING OBJECTIONS TO EXEMPTIONS

Danny R. Pendley (the "Debtor") filed for relief under Chapter 7 of the Bankruptcy Code on May 14, 2012 in the captioned case. In his schedules, he claimed various items of property as exempt under Texas law as permitted by section 522(b)(3) of the Bankruptcy Code.[1] On September 4, 2012, John Patrick Lowe, the duly appointed Trustee in this case (the "Trustee"), filed his Objections to the Debtor's Schedule C Property Claimed as Exempt [Docket No. 46] in which he objected to the Debtor's claim of exemption in various assets. The assets, with the basis of the Trustee's objection given in parenthesis, are:

> 1. 105 Waters Edge, Horseshoe Bay Texas (not homestead) [the property is in Llano County, Texas and herein referred to as the "Waters Edge property"]

---

[1] The Bankruptcy Code is 11 USC § 104 *et.seq.* References to section numbers are to the Bankruptcy Code unless otherwise stated.

2. 6875 Heuermann Road, San Antonio, Texas (owned by Cypress 1 LP and not the Debtor)
3. 50% interest in Aresano's International, Inc. (stock in a corporation is not exempt)
4. Money owed from Artesano's International, Inc. (accounts receivable are not exempt)
5. 12 trucks ("The Debtor's statements in his Schedules B and C state that these trucks were transferred by River Oaks LP to Hardline Construction in June of 2010. It doesn't appear that the trucks were assets of the Debtor when this case was commenced.")
6. 2000 Champion bass boat, motor and trailer. (these items do not constitute 'athletic and sporting equipment' nor are they 'tools of a trade' because the Debtor's tax returns list him as a "business executive" and no income from fishing is listed in the schedules.)

On September 5, 2012, SCP Distributors, LLC, individually and as successor to South Central Pool Supply, Inc ("SCP") and a party in interest in this case, filed its Objection to Debtor's Claim of Exemptions [Docket No. 48] in which it objected to the Debtor's claim of exemption in two parcels of real estate. The assets, with the basis of the objection given in parenthesis, are:

1. 105 Waters Edge, Horseshoe Bay, Texas (not homestead)
2. 6875 Heuermann Road, San Antonio, Texas (not owned by the Debtor)

SCP asserted that it filed a lien on the Waters Edge property on September 28, 2011, but no evidence of that lien was introduced at this hearing.

By a Stipulation Relating to Objections to the Debtor's Claims of Exempt Property filed November 28, 2012 [Docket No. 71] the Debtor, the Trustee and SCP agreed that the Trustee's objection to items 2 through 6 described above should be sustained and the assets not allowed as exempt. The parties agreed that the only remaining issue was the claim of exemption on the Waters Edge property.

On November 30, 2012 the Debtor filed a response to the Objections to Exemptions [Docket No. 72] in which he asserted that for some time, he had intended to claim the Waters Edge property as his homestead; thus impressing it with homestead character and that it was the only place he had to raise his high school age child.

A hearing was held concerning the Waters Edge property on December 2, 2012. The Debtor was the only witness. Without opposition, the Trustee and SCP introduced

exhibits. At the conclusion of the hearing, the court asked the parties to prepare a chronology of the events in this case. SCP filed such a chronology of events [Docket No. 75], followed by the Debtor's response [Docket No. 76], and SCP's reply to the Debtor's response [Docket No. 77].

The testimony indicated that the Debtor had a large pool construction and servicing business. He stated that he had 75 employees at the time he closed his business on June 18, 2010. Further, at the time there were 20 pools under construction and he tried to complete them afterwards, if the homeowners would pay him additional monies to do so.

As part of the winding down of his business, on April 15, 2011 the Debtor sold some property on Interstate Highway 10, which was apparently the main base of his business operations. The bank, which had a lien on the I-10 property, also possessed a lien on the Waters Edge property. The bank insisted that its substantial lien on the Waters Edge property be paid off because the notes were cross collateralized. The Waters Edge property was owned by Cypress No. 1 L.P., a limited partnership that the Debtor controlled through various entities.

On May 3, 2011, the Debtor caused Cypress No. 1 L.P. to transfer the Waters Edge property to him and his wife, Debra Pendley [SCP Exhibit No. 1]. The testimony revealed that neither the Debtor nor his wife paid any consideration for that transfer. At that time, they filed an affidavit in the Llano County property records asserting that the Waters Edge property was their homestead [SCP Exhibit No. 2]. In this case, the Debtor seeks to attack a March 1, 2012 judgment of the County Court of Bexar County, Texas which declared void *ab initio* the designation of homestead for the Waters Edge property filed by the Debtor in the Llano County property records [SCP Exhibit No. 10]. The court found that the designation violated a January 2011 injunction [SCP Exhibit No. 9]. There is no evidence that a motion for new trial or an appeal was made with respect to that judgment. It is not necessary for this court to consider the effect of that judgment because the issue before this court is whether the Waters Edge property was the Debtor's homestead on the date he filed for Bankruptcy

The schedules filed with the Petition on May 14, 2012 [Trustee Exhibit No. 1] list the following assets and liabilities:

3

- Schedule A, Real Property [page 6] valued at $760,000 – the Waters Edge property. No liens are shown.
- Schedule B, Personal Property valued at $57,593.23 [page 12]. Included in the personal property are 11 business entities owned or controlled by the Debtor, all of which he stated had "unknown" value [page 9].
- Schedule C, Property Claimed as Exempt valued at $817,593.32 [page 16].
- Schedule D, Secured Claims totaling $893,000.00 [page 20]. This schedule lists several abstracts of judgment against the Waters Edge property.
- Schedule E, Unsecured Priority Claims totaling $26,799.86 [page 22].
- Schedule F, Unsecured Claims totaling $2,955,074.33 [page 59].

In two places when referring to the Waters Edge property, the schedules state:

> "Debtor – over 65 homestead exemption and primary residence of debtor and child (child will move up when school ends at end of May 2012.)"

[Schedule A, page 6 and Schedule C, page 13].

The testimony revealed that the Debtor is married and that his wife lives with him and the daughter in the Waters Edge property. His wife is not mentioned in the Schedules or the Statement of Financial Affairs. He testified that she has a business known as River Oaks Pools, but claimed that it was not operating. The Debtor acknowledged that he had previously used the name of River Oaks Pools in the course of business.

The Debtor, his wife, and the daughter previously resided at 29369 Raintree Ridge, Fair Oaks Ranch, Texas.[2] A Texas driver's license issued to the Debtor on March 3, 2011, gives the Raintree address, and a Texas driver's license issued to his wife, Debra Lynne Pendley, on September 19, 2011, also gives the Raintree address [SCP Exhibit No. 7].

The Debtor testified that he began making efforts to change his homestead to the Waters Edge property in late 2010, when he felt efforts to foreclose on the Raintree property were commencing. He stated that his wife and daughter were living in the

---

[2] The deed to the Raintree property dated May 17, 2004 is to "Dan R. Pendley, an unmarried person" [Trustee's Exhibit No. 9]. The Debtor and Deborah Pendley married April 29, 2005 and he adopted her daughter Lana on December 5, 2005. [SCP Exhibit No. 5, page 14: lines 24-25; page 43:lines 18-24].

Raintree property in May 2012 because the daughter was in school in Boerne.  He said he lived in the Waters Edge property and traveled back and forth at that time.[3]

The Raintree property was foreclosed upon on May 1, 2012 with a bid price of $420,355.58.  The Trustee's deed was acknowledged on May 10, 2012, and filed for record in the Bexar County Clerk's office on May 15, 2012 [Trustee's Exhibit No. 10].  As noted, this bankruptcy case was filed on May 14, 2012, and the schedules recite that the daughter would be moving to the Waters Edge property when school was out at the end May.  Lacking a definite moving date in the evidence, the court finds that the wife and daughter did not move to the Waters Edge property until after the filing of this bankruptcy case.

### Homestead

The following quotations from *In re Hunt* set forth the Texas law that must be applied in this case since the Debtor elected the Texas exemptions.

> The initial burden of establishing that property is homestead property is on the claimant of the protection [citations omitted]
>
> In Texas it is well settled that in order to establish homestead rights, a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as homestead must be shown. [citations omitted]   Good faith intention to occupy the premises as a homestead alone is not enough to create a homestead. [citations omitted].
>
> Once homestead rights are shown to exist in property, they are presumed to continue, and one asserting an abandonment has the burden of pleading and proving it by competent evidence before a new homestead can be claimed. [citations omitted].
>
> Abandonment of the homestead nature of property cannot be accomplished by intent alone.  There must be discontinuance of use, an intention not again to use the property as a home, to constitute abandonment. [citation omitted]  Without the abandonment of an existing

---

[3] The Debtor's statement that he lived in the Waters Edge property can be explained by the fact that, before it closed, his swimming pool business constructed "numerous" pools in Horseshoe Bay (where the Waters Edge property is located) [SCP Exhibit No. 5, page 19: line 4 – page 20:line 9]. Additionally, the Debtor moved to the Waters Edge property because he and his wife were having marital difficulties, resulting in his filing for divorce in November 2011 [SCP Exhibit No. 6, page 23].  Apparently they have reconciled.

homestead, no right can exist to fix that homestead character to another piece of property.

. . . Under Texas law, where no homestead designated by actual occupancy exists, effect may be given to the ownership, intention and preparation to use for a home. However, when there is a home in fact, such home cannot be abandoned while actually used as the home of the family [citation omitted].

*In re Hunt*, 61 B.R. 224, 228-29 (Bankr. S.D. Tex. 1986).[4]

Exemptions are determined as of the date the bankruptcy petition is filed. *In re Oso*, 283 F.3d 686 (5th Cir. 2001) (en banc). "We cannot emphasize too strongly that the day on which the bankruptcy petition is filed is the 'as of' date for determining the applicability of exemption provisions." *Id. at* 692

There is no question in this case but that the homestead of the Debtor and his family was the Raintree property. The Debtor made numerous efforts to say that the Waters Edge property was his homestead, but the facts do not support his claims and as noted above, a state court ruled those actions ineffective. As stated in *In re Hunt*, actions to claim a new homestead are not effective until the Debtor has abandoned the former homestead. As long as the wife and daughter were living in the Raintree property, it remained the family homestead. The Debtor has not met his burden to show when the Raintree homestead was abandoned, but the facts clearly indicate it was not abandoned until after the bankruptcy case was filed. Consequently the Waters Edge property cannot be claimed as an exempt homestead in this bankruptcy case.

The Chapter 7 Trustee asserts three alternative objections to the Debtor's claim of exemptions: (1) the transfer of the property from Cypress 1 L.P. to the Debtor and his wife, being without consideration, was in fraud of the creditors of the partnership, (2) the transfer of property from the partnership was done within 10 years of the bankruptcy with intent to delay or defraud a creditor and thus violates section 522(o), and (3) the homestead claim exceeds the amount allowed under section 522 (p). In view of the court's finding that the Waters Edge property is not the Debtor's homestead, it is not necessary for the court to address these alternative objections.

Judgment accordingly.

---

[4] *See also* J. THOMAS OLDHAM, TEXAS HOMESTEAD LAW 68-74 (3rd ed. 2006).

#########